UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TERASA RENE FILSOOF,

                    Plaintiff,

   - against -

WHEELOCK STREET CAPITAL, LLC and
WS CE RESORT OWNER, LLC,

                    Defendants.
----------------------------------------------------------------x

**SECOND AMENDED COMPLAINT**

Civil Action No.: 22-cv-09359(NRB)

Plaintiff TERASA RENE FILSOOF, by and through her attorneys The Bostany Law Firm PLLC, as and for her Second Amended Complaint against the Defendants WHEELOCK STREET CAPITAL, LLC and WS CE RESORT OWNER, LLC alleges as follows:

## PARTIES

1. At all times relevant hereto, the Plaintiff TERASA RENE FILSOOF (hereinafter "TESS") was and is an individual residing in both the State of New York and Georgia.

2. At all times relevant hereto, Defendant WHEELOCK STREET CAPITAL, LLC (hereinafter "WHEELOCK") was and is a limited liability company organized and existing pursuant to the laws of the State of Delaware.

3. At all times relevant hereto, Defendant WHEELOCK maintained and operated a hotel and restaurant called Chateau Elan, located at 100 Rue Charlemagne Street in Braselton, Georgia 30517 ("the Premises").

4. At all times relevant hereto, Defendant WS CE RESORT OWNER, LLC (hereinafter "WS") was and is a limited liability company organized and existing pursuant to the laws of the State of Delaware.

5. At all times relevant hereto, WS was and is the owner of the Premises.

## JURISDICTION and VENUE

6. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 as the Plaintiff is a citizen of a different state than the Defendant, the Plaintiff is a citizen of a different state than all members of the Defendant, and the amount in controversy exceeds $75,000.

7. Plaintiff's New York residence is located in the City of New York, Borough of Manhattan, County of New York.

8. Plaintiff's Georgia residence is located in the City of Atlanta.

9. At all times relevant hereto, Plaintiff was a citizen of and domiciliary of the State of Georgia.

10. At all times relevant hereto WHEELOCK's principal place of business was and is 660 Steamboat Road, Greenwich, Connecticut 06830.

11. At all times relevant hereto Merrick Kleeman and Jonathan Paul were and are upon information and belief the sole members of WHEELOCK.

12. At all times relevant hereto, Merrick Kleeman was and is upon information and belief an individual residing in the State of Connecticut with an address at 909 West Road, New Canaan, CT 06840.

13. At all times relevant hereto, Jonathan Paul was and is upon information and belief an individual residing in the State of Massachusetts with an address at 500 Boylston Street, 16th Floor, Boston, Massachusetts 021006.

14. None of the members/principals of WHEELOCK are citizens of the State of Georgia.

15. At all times relevant hereto, WHEELOCK maintained Chateau Elan.

16. At all times relevant hereto, WS's principal place of business was is WHEELOCK'S published headquarters in the State of Connecticut.

17. At all times relevant hereto, WS and WHEELOCK shared the same address as their principal place of business.

18. On October 4, 2022, WS's sole asset was Chateau Elan.

19. At all times relevant hereto, Chateau Elan was operated by WHEELOCK.

20. At all times relevant hereto, Chateau Elan was maintained by WHEELOCK.

21. Upon information and belief, all Members of WS are Members of WHEELOCK.

22. Upon information and belief, All WS records are maintained by WHEELOCK.

23. Upon information and belief, WS is a shell company with no employees that is treated as a department of WHEELOCK.

24. Upon information and belief WHEELOCK's establishment of WS as a separate LLC is a mere fiction as WS has no independent operations.

25. Upon information and belief, records relating to maintenance of Chateau Elan on and before October 4, 2022 were and are maintained in the State of New York.

26. Upon information and belief, the mechanical door closer discussed *infra* was purchased by WHEELOCK employee from the State of New York.

27. Upon information and belief WHEELOCK is at home in the State of New York.

28. Upon information and belief The majority of WHEELOCK's business activities are conducted in the State of New York.

29. Upon information and belief Key Principals of WHEELOCK are citizens of the State of New York.

30. Upon information and belief Principals of WHEELOCK conduct their business activity for WHEELOCK out of offices in the State of New York including home offices.

31. Upon information and belief Key employees of WHEELOCK conduct their business activity for WHEELOCK out of offices in the State of New York including home offices.

32. Upon information and belief WHEELOCK's Finance Department is located in the State of New York.

33. Upon information and belief WHEELOCK's Director of Finance is a citizen of the State of New York.

34. Upon information and belief WHEELOCK's Director of Finance works from offices including a home office located in the State of New York.

35. Upon information and belief maintenance of Chateau Elan is conducted from home offices and other offices located in the State of New York.

36. Upon information and belief no WHEELOCK principal is a citizen of the State of Georgia.

37. Upon information and belief, no Member of WS resides in the State of Georgia.

38. At all times relevant hereto Hunter Jones was and is a principal of WHEELOCK.

39. Mr. Jones resided in the State of New York in 2022.

40. Upon information and belief, Mr. Jones was domiciled in the State of New York in 2022.

41. Upon information and belief, Mr. Jones conducted business in the State of New York in 2022.

42. Upon information and belief, Mr. Jones was a citizen of the State of New York in 2022.

43. Upon information and belief, at all times relevant hereto Claude Chandonnet was and is a principal of WHEELOCK.

44. Upon information and belief, Mr. Chandonnet resided in the State of New York in 2022.

45. Upon information and belief, Mr. Chandonnet was domiciled in the State of New York in 2022.

46. Upon information and belief, Mr. Chandonnet conducted business in the State of New York in 2022.

47. Upon information and belief, Mr. Chandonnet was a citizen of the State of New York in 2022.

48. At all times relevant hereto LeRoy Howard II was and is the Vice President of WHEELOCK.

49. Upon information and belief, Mr. Howard resided in the State of New York in 2022.

50. Upon information and belief, Mr. Howard was domiciled in the State of New York in 2022.

51. Upon information and belief, Mr. Howard conducted business in the State of New York in 2022.

52. Upon information and belief, Mr. Howard was a citizen of the State of New York in 2022.

53. At all times relevant hereto Travis Erdman was and is a principal of WHEELOCK.

54. Upon information and belief, Mr. Erdman resided in the State of New York in 2022.

55. Upon information and belief, Mr. Erdman was domiciled in the State of New York in 2022.

56. Upon information and belief, Mr. Erdman conducted business in the State of New York in 2022.

57. Upon information and belief, Mr. Erdman was a citizen of the State of New York in 2022.

58. At all times relevant hereto Elizabeth DeVito was and is the Director of Finance at WHEELOCK.

59. Upon information and belief, Ms. DeVito resided in the State of New York in 2022.

60. Upon information and belief, Ms. DeVito was domiciled in the State of New York in 2022.

61. Upon information and belief, Ms. DeVito conducted business in the State of New York in 2022.

62. Upon information and belief, Ms. DeVito was a citizen of the State of New York in 2022.

63. Upon information and belief, none of the members of WS are citizens of the State of Georgia.

64. Upon information and belief, in 2022 WHEELOCK conducted substantial business in the State of New York.

65. Upon information and belief, in 2022 a significant number of WHEELOCK principals were and are citizens of and reside in the State.

66. Upon information and belief, in 2019-2022 WHEELOCK engaged and engages in continuous, permanent, and substantial activity in the State.

67. Upon information and belief, in 2022 and prior thereto, Principals of WHEELOCK worked from the State of New York on a continuous basis.

68. Upon information and belief, in 2022 and prior thereto, Principals of WHEELOCK conducted business while physically present in the State of New York.

69. Upon information and belief, almost every business day in 2022, principals of WHEELOCK conducted business while physically present in the State of New York.

70. Upon information and belief, in 2019-2022, WHEELOCK maintained Chateau Elan from the State of New York.

71. Upon information and belief, at least some of the individuals responsible for maintaining Chateau Elan resided in the State of New York in 2019-2022.

72. Upon information and belief, any of the WHEELOCK Principals that do not reside in the State, frequently commute to the State of New York, from Connecticut to conduct business.

73. Upon information and belief, a significant number of WHEELOCK'S permanent employees are citizens of the State.

74. Upon information and belief, in 2019-2022, WHEELOCK generated and generates significant revenue from the State of New York.

75. Upon information and belief, in 2019-2022, Defendants solicited and solicit business from New York residents.

76. Upon information and belief, a substantial number of New York residents stayed at Chateau Elan in 2021 and 2022.

77. Upon information and belief, in 2019-2022, Defendants advertised and marketed Chateau Elan to New York residents on a regular basis.

78. Upon information and belief, in 2019-2022, a significant portion of the revenue at Chateau Elan was from New York residents.

79. Upon information and belief, in 2019-2022, WHEELOCK regularly received documents in the State of New York.

80. Upon information and belief, in 2019-2022, WHEELOCK provided New York addresses to third parties as a way to contact WHEELOCK.

81. Upon information and belief, in 2019-2022, WHEELOCK held itself out as being located in the State of New York.

82. Upon information and belief, in 2019-2022, WHEELOCK's Principals had offices in their homes from which they conducted business.

83. Upon information and belief, in 2019-2022, WS conducted business in the State of New York by virtue of their being controlled and dominated by WHEELOCK.

84. Upon information and belief, in 2019-2022, WHEELOCK employees located in the State of New York were conducting business for WS.

85. Upon information and belief, in 2019-2022, WS had no functional independence, was managed exclusively by individuals that were paid by WHEELOCK.

86. Upon information and belief, in 2019-2022, WS had no officers of its own.

87. Upon information and belief, in 2019-2022, WS had and has no bank account.

88. Reverse piercing of the corporate veil would impose jurisdiction over WS, the alleged owner of Chateau Elan.

89. Upon information and belief, in 2019-2022, WHEELOCK and WS were and are alter egos of eachother.

90. Upon information and belief, in 2019-2022 WHEELOCK funded operations and maintenance of Chateau Elan

91. Upon information and belief, in 2019-2022, WHEELOCK conducted significant banking in the State.

92. Upon information and belief, in 2019-2022 conducted banking in the State involving millions of dollars of transactions.

93. Upon information and belief, in 2019-2022 WHEELOCK had multiple bank accounts in the State with significant balances.

94. WHEELOCK is a private real estate investment firm.

95. Upon information and belief, WHEELOCK was and is now actively seeking to deploy $2.2 billion in various investment vehicles.

96. Venue is proper in the Southern District of New York as a substantial part of the events giving rise to this action occurred in New York County which lies within the Southern District of New York.

97. A substantial amount of Plaintiff's pain and suffering took place in New York.

98. Plaintiff was treated for her in injuries by her primary orthopedist and other treating physicians in New York.

99. Plaintiff's surgeon is located in New York and on March 14, 2024, she is undergoing surgery as a result of the injuries caused by Defendants herein at Mt. Sinai Medical Center located in New York City.

100. Upon information WHEELOCK owns substantial assets in the State of New York, including real estate and hotels in Manhattan.

101. Plaintiff is a citizen of a different state than all of the members of WHEELOCK.

102. Plaintiff is a citizen of a different state than the principal place of business of WHEELOCK.

103. Plaintiff is a citizen of a different state than the state of organization of each Defendant.

104. Jurisdiction exists over Defendants under CPLR §301.

105. Jurisdiction also exists over Defendants under CPLR §302(a)(3)(i) as they committed a tortious act outside the state causing injury inside the State.

106. Defendants derived substantial revenue from New York residents and entities.

107. Defendants solicited business from New York residents and entities.

108. Upon information and belief, in 2019-2022, Defendants were and are engaged in interstate commerce.

109. Upon information and belief, in 2019-2022, at all times relevant hereto, WHEELOCK transacted business within the State of New York.

110. Upon information and belief, in 2019-2022, WHEELOCK contracted to supply services in the state of New York.

111. Upon information and belief, in 2019-2022, WHEELOCK regularly did and/or transacted business in New York.

112. Upon information and belief, at all times relevant hereto, WHEELOCK contracted to provide services in New York.

113. Upon information and belief, at all times relevant hereto, Defendants regularly did and/or solicited business in New York.

114. Upon information and belief, at all times relevant hereto, WHEELOCK engaged in persistent courses of conduct in New York.

115. Upon information and belief, Defendants derived substantial revenue from services rendered in New York.

116. At all times relevant hereto, Defendants expected or should reasonably expect its actions to have consequences in New York.

117. At all times relevant hereto, Defendants derived substantial revenue from interstate and international commerce.

## **ALLEGATIONS**

118. At all times relevant hereto, WS owned a hotel and restaurant known as Chateau Elan located at 100 Rue Charlemagne Street in Braselton, Georgia 30517 ("the Premises").

119. At all times relevant hereto, WHEELOCK upon information and belief operated the Premises.

120. At all times relevant hereto, WHEELOCK upon information and belief controlled the Premises.

121. At all times relevant hereto, WHEELOCK upon information and belief was responsible to maintain the Premises.

122. At all times relevant hereto, Defendants were responsible to maintain the Premises in a safe condition for patrons, guests, and business invitees.

123. On October 4, 2022, Plaintiff TESS was a patron, guest, and business invitee of the Defendant at the Premises.

124. Defendants had a duty to Plaintiff.

125. On said date at approximately 8:00 p.m., Plaintiff was lawfully at the Premises.

126. On said date and time, a mechanical device existed at the top of double doors in the entranceway to an atrium at the Premises (hereinafter "doorway").

127. On said date and time, while TESS was attempting to pass through the doorway, a metal object at the top of the door fell off and came crashing down onto her wrist causing TESS severe and permanent injury.

128. Metal objects do not normally fall from the tops of doors in the absence of negligence.

129. Defendants and their agents, employees and servants had exclusive control over the door and the metal object that fell on the Plaintiff.

130. There was no superseding or intervening cause for the metal object to fall from the door and cause injury to the Plaintiff.

131. The falling of the metal object on Plaintiff, a guest at Chateau Elan, is sufficient to infer Defendants' negligence.

132. Defendants negligently maintained the aforementioned door and doorway.

133. The metal object became unaffixed to the door as the door and the doorway were not properly maintained by Defendants.

134. Defendants are 100% and solely responsible for the injury to Plaintiff proximately caused by the falling of the metal object.

135. As a proximate result of the falling of the metal object, Plaintiff suffered serious and painful injuries and disability and has incurred substantial damages, pain, suffering and disability.

136. Defendants were negligent in the maintenance, operation, and ownership of the mechanical device in allowing it to be maintained in a condition that the metal object would fall and potentially injure a business invitee.

137. It was foreseeable that persons would be passing through the doorway where the metal object was located.

138. Defendants were solely and exclusively responsible for the metal object falling on Plaintiff and her resulting injuries/damages.

WHEREFORE, Plaintiff TERASA RENE FILSOOF demands judgment against the Defendants jointly, severally and alternatively for compensatory damages, and for interest, and the costs of this suit as allowed by law.

## TRIAL BY JURY

Plaintiff hereby demands a trial by jury as to all issues.

Dated: March 13, 2023

                              **THE BOSTANY LAW FIRM PLLC**

                              By:    s/John P. Bostany.
                                       *Attorneys for Plaintiff*
                                         3 World Financial Center- 24th Floor
                                         New York, New York 10281
                                         (212) 530-4400
                                         john@bozlaw.com